IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TIMOTHY W. WILSON, | ) | |
| | ) | |
| Petitioner, | ) | 4:17CV3155 |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT R. FRAKES, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Respondent. | ) | |

Timothy W. Wilson (Petitioner or Wilson) has filed a petition for writ of habeas corpus under the provisions of 28 U.S.C. § 2254. The Respondent has answered and filed the relevant state court records. The parties have now fully briefed the case.

The facts admitted by Petitioner at his guilty plea hearing–repeated sexual assault of his children plus a video of Wilson (or some other adult male) being sexually serviced by one of his children–are as sad as Wilson's sentences are long. I deny the petition with prejudice for the reasons set forth below.

### *Claims*

**Claim One**: Petitioner was denied his rights to due process and effective assistance of counsel under the 6th and 14th Amendments when the trial court denied his request for new counsel and permitted counsel to continue to represent Petitioner despite counsel's failure to appear at the hearing for new counsel.

**Claim Two**: Petitioner was denied effective assistance of counsel because trial counsel (1) failed to communicate with Petitioner regarding the charges he faced and the contents of discovery which would have allowed Petitioner "to make a proper and informed choice" (Filing no. 1 at

CM/ECF pp.7, 17); (2) failed to object to venue where not all of the offenses charged occurred in Scotts Bluff County; (3) failed to challenge the State's violation of Petitioner's due process rights to an initial appearance within 48 hours of his warrantless arrest; (4) failed to quash or suppress the illegal and invalid search warrants; (5) failed to suppress Petitioner's inculpatory statement and challenge the statement's admissibility as involuntary; and (6) failed to investigate another probable suspect.

**Claim Three**: Petitioner was denied his right to due process under the 14th Amendment because the state failed to place any evidence on the record supporting Petitioner's conviction for creation of a visual depiction of sexually explicit conduct.

### *Procedural History*[1]

On May 21, 2014, in the District Court of Scotts Bluff County, Nebraska, Petitioner Timothy W. Wilson pled guilty to two counts of first degree sexual assault on a minor and one count of creating or generating a sexually explicit visual depiction, by a person who was more than 19 years of age. The state district court sentenced Petitioner to consecutive prison terms of 20 to 30 years on each of the three convictions.

Petitioner appealed claiming that the sentences were excessive and constituted an abuse of discretion even though they were within the statutory limits. On January

---

[1] This summary and the following discussion are derived from Filing no. 11, the records of the state court. Additionally, and as requested by the Respondent (Filing no. 20 at CM/ECF p. 2 n.1), I take judicial notice of the online records of this case, to wit: *State v. Timothy W. Wilson*, Scotts Bluff County District Court, Case No. CR14-39, at https://www.nebraska.gov/justice/. *See Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005) (court may take judicial notice of public records); Federal Rule of Evidence 201 (providing for judicial notice of adjudicative facts).

28, 2015, the Nebraska Court of Appeals affirmed Petitioner's convictions and sentences on direct appeal by sustaining the State's motion for summary affirmance. Petitioner did not file a petition for further review in the Nebraska Supreme Court. Petitioner had the same lawyer–Bernard Straetker, the Public Defender for Scotts Bluff County–on the direct appeal as he had when he entered his guilty pleas.

On January 21, 2016, Petitioner filed a motion for post-conviction relief in the state district court; amended post-conviction motions were later filed. The state district court ultimately denied post-conviction relief without taking testimony or hearing argument from Wilson.[2] In material part, the judge's decision is set forth below:

> The first issue raised, that the Court did not appoint different counsel when requested, is by itself without merit. Although no journal of the hearing exists, the judge's notes indicate a hearing was held and the request for alternate counsel was denied. This issue is actually a part of the ineffective assistance of counsel issues, as the counsel who remained on the case is who is alleged to be ineffective. One has a constitutional right to effective counsel, but not a particular counsel at State expense.

> The rest of the issues raised are ruled on as follows.

> *a) Defendant's statements to law enforcement should have been challenged by a motion to suppress. The defendant's pastor, because he is a mandatory reporter, became a state actor. The Miranda waiver form was not properly used.*

---

[2] Because they were out of time, the judge did not consider a second amended petition and supplement that was filed after the matter had been submitted on July 1, 2016, but they did not raise issues materially different from those resolved in the October 5, 2016 decision.

The motion states generally that a motion to suppress should have been filed because his statement was involuntary and/or induced by promises of leniency. There is no factual allegation of coercion or any promise made by anyone. Perhaps the defendant's pastor encouraged him to admit what he had done to law enforcement– but that does not constitute improper coercion or render his statement involuntary. No assertion is made the State arranged anything in advance with the pastor to compel the defendant to make a statement. The defendant does assert the Miranda waiver form was not properly used, but he does not state how that would render his statement involuntary or the result of promises of leniency. This assertion is conclusory and not supported by factual allegations of how his statement was involuntary, or what he was promised.

> b) Defendant was not brought before a judge within 48 hours of his arrest, therefore a motion to suppress should have been filed.

The motion cites to a Rule, which cannot be found based on the notation. The notation may be a reference to section 29-501, which was repealed in 2007 and discussed a four day delay in proceedings before a magistrate.

The applicable statute on the timeliness of a preliminary hearing is section 29-504, and it directs the magistrate to inquire into the complaint "as soon as may be". Neither the statute nor the annotated cases refer to a mandatory time period of 48 hours. *State v. Nissen*, 252 Neb. 51 (1997) provided that a defendant's statements were **not** rendered inadmissible on the ground that the defendant was detained more than 48 hours without a judicial determination of probable cause. Here, it appears the defendant made a statement to the deputy soon after his arrival at the sheriff's office, where he appeared of this own accord. There is no indication or assertion his statements

followed an extensive period of custody before preliminary hearing. There is no statement as to what would be subject to suppression if what the defendant cites as a problem indeed is a problem.

> *c) Both search warrants were invalid, because the affidavits were dated two to three months before the warrant.*

The evidence before the Court related to the two warrants (exhibits 1 and 2) shows that the affidavits were signed before the county judge on the same day (January 22, 2014) that the warrants were. The dates alleged by the defendant are not supported by the evidence.

> *d) Venue was not established, due to insufficient factual basis. Count I alleges a July 13 date of commission which in fact precedes the actual events. In Count II, the dates are not stated in the factual basis. The date stamp on a video establishes that the events depicted in the video could not have occurred in Nebraska.*

The establishment of a factual basis is not the same as a trial. The State need not prove beyond a reasonable doubt all the elements in a summary statement to the Court. To accept a plea resulting in a guilty finding, the judge must be satisfied that a factual basis exists for the plea.

The county attorney in this case related that the assaults began about two years previous. They occurred in different locations, some in Henry, Nebraska (which is in Scotts Bluff County), and some in Wyoming. Two instances of oral sex between the defendant and his son were reported in the past year. The son witnessed the defendant sexually assaulting his sister in December of 2013, the month before his arrest.

The video (which is not a part of the record and which the Court has not seen) apparently has a time stamp of November of 2013, and is an example of the conduct, not necessarily proof of a particular act on a particular day, or at a particular location. And, the video also goes with the visual depiction charge, which refers to one who *makes, publishes, directs, creates, provides or in any manner generates* a visual depiction of sexually explicit conduct involving a child as a participant. The video was found when searching the defendant's computer, which was seized in Scotts Bluff County. The evidence also shows that four different videos were mentioned by the victims. Some assaults referred to occurred in the camper when it was parked in Henry, and some in Wyoming of a hunting trip.

See *State v. Bargen*, 219 Neb. 416, (1985); *State v. Jones*, 214 Neb. 145, (1988) (holding that sufficiently detailed complaint; prosecutor's summarized facts accepted as true by defendant; finding that plea was intelligently and voluntarily made; and record at sentencing, including presentence report, supplied sufficient factual basis for judge).

The defendant made no comment on the factual basis given despite an opportunity to do so at the time he entered his pleas.

The defendant alleges no facts to show that counsel was deficient in failing to investigate the venue of the charges. The factual basis given shows venue to be proper, and the defendant declined to comment on the factual basis received by the Court.

*e) Defense counsel did not develop the theory of another suspect than the defendant.*

This is apparently a bare assertion that some other person committed the assaults. This person, named James

Daniel Seadorf, may have assaulted the children as well. But as far as his counsel's performance, it does not matter. The children reported that their father, the defendant, assaulted them. There was no issue of the identity of the assailant being anyone other than the defendant.

In this case, the defendant reported voluntarily to the sheriff's office and confessed. He did this after his wife came home and found the video he prepared of himself and their daughter engaging in sexual acts. He was possibly accompanied by his pastor, who may have urged him to report the matter. There is absolutely no evidence or even an assertion by the defendant in his motion to support the filing of a motion to suppress his statements. His attorney was faced with a situation of representing a client who had already made a full confession, one supported by the statements of the victims, and a video the defendant made of himself assaulting his daughter, and other corroborating evidence as well. The factual basis given at the time of the plea was more than sufficient to establish the charged conduct occurred, and that it occurred in Scotts Bluff County at or near the dates alleged. There is no showing of incompetent counsel or prejudice sufficient to justify an evidentiary hearing and appointment of counsel.

Mr. Wilson makes many assertions, most of which are conclusory only or not supported by facts in the record by which the Court could find if proved constitute a denial or violation of his rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. The records and files in the case affirmatively show that the defendant is entitled to no relief, and therefore the court is not required to grant an evidentiary hearing or appoint an attorney.

No authority is cited to support the retention of an investigator to assist the defendant in developing a basis for a motion for post-conviction relief. What the defendant

seeks with an investigator is to pursue Seadorf as the actual perpetrator. While it may be true others have victimized J.W., in this case J.W. and the other victim, in their statements, positively identified the defendant as the one who assaulted them. The defendant confessed to assaulting both the victims in this case, his son and daughter.

The Court denies an evidentiary hearing, denies the request to appoint counsel, and denies the request to retain an investigator.

(Filing no. 11-10 at CM/ECF pp. 156-159.) (Emphasis in original.)

Petitioner appealed, and the Nebraska Court of Appeals affirmed the state district court's denial of post-conviction relief by sustaining the State's motion for summary affirmance. Wilson's brief on appeal argued only three of the claims presented here–Claim One, Ground 2 of Claim Two and Ground 3 of Claim Two. (Filing no. 11-6 at CM/ECF pp. 6, 14-44.) The Nebraska Supreme Court denied Petitioner's request for further review, and the mandate was issued on November 20, 2017. Petitioner filed his habeas petition on November 27, 2017. Respondent does not argue that the petition is untimely.

### Background Related to Guilty Plea and Relationship With Counsel

On February 6, 2014, an information was filed in the District Court of Scotts Bluff County, Nebraska, charging Petitioner Timothy W. Wilson with three counts of first degree sexual assault of a child, a Class IB felony, and one count of creating or generating sexually explicit visual depiction, by a person more than 19 years of age, a Class ID felony. (Filing no. 11-9 at CM/ECF pp. 16-18.) The victims alleged in the information were Wilson's son and daughter. (*Id.* at CM/ECF pp. 16-17; Filing no. 11-12 at CM/ECF pp. 26-27.) Wilson was found to be indigent and Bernard Straetker, the Scotts Bluff County Public Defender, was appointed to represent Wilson. (*Id.* at CM/ECF p. 4; Filing no. 11-9 at CM/ECF p. 22.)

On April 24, 2014, a hearing was held on Wilson's request for new counsel. (Filing no. 11-12 at CM/ECF pp. 8-10.) Wilson sent a letter to the trial court stating that he wanted the court to appoint a different lawyer because he was unable to contact Straetker. (*Id.*) After making note of the various filings by Straetker since being appointed in the case, the court informed Wilson that he was not entitled to counsel of his choice and that the court would notify Straetker of the situation. (*Id.*) The court denied Wilson's request for new counsel but invited him to file another request if the situation was not resolved. (*Id.* at CM/ECF p. 10; Filing no. 11-9 at CM/ECF p. 37.) No further request was filed in the court file.[3]

On May 14, 2014, Wilson and the State reached a plea agreement, which required the State to file an amended information alleging two counts of first degree sexual assault on a minor, a Class II felony, and one count of creating or generating sexually explicit visual depiction, by a person more than 19 years of age, a Class ID felony. (Filing no. 11-9 at CM/ECF p. 31.) In exchange for the filing of the amended information, Wilson agreed to plead either guilty or no contest to the amended charges. (*Id.*)

A plea hearing was held on May 21, 2014, and Wilson pled guilty to the charges contained in the amended information: two counts of first degree sexual assault on a minor and one count of creating or generating a sexually explicit visual depiction by a person who was more than 19 years of age. (Filing no. 11-12 at CM/ECF pp. 11-14, 25-26; Filing no. 11-9 at CM/ECF pp. 28-30.) When asked by the district court if the plea agreement was how Wilson wanted to handle his case, Wilson replied, "Yes. I knew at the beginning I didn't want to go to court to take this to trial."

---

[3] In an appellate brief Wilson submitted to the Court of Appeals on his postconviction matter, he claims he sent a letter complaining about counsel on May 5, 2014. (Filing no. 11-5 at CM/ECF p. 15.) After searching the record, I cannot find any such letter.

(Filing no. 11-12 at CM/ECF p. 14.) Prior to entering his guilty pleas, Wilson informed the court that he was ready to plead to the charges because he did not want to put his children through it anymore or cause them more harm. (*Id.* at CM/ECF pp. 23, 25.)

Wilson was also asked at the plea hearing if he was satisfied with Straetker's performance. (*Id.* at CM/ECF pp. 20-21.) He replied, "Yeah, for the most part, yeah, your Honor." (*Id.* at CM/ECF p. 21.) The court inquired whether the issues Wilson previously had with Straetker had been resolved, and Wilson stated that they had been resolved "as well as they could be." (*Id.*)

In this regard, part of the exchange between the judge and Wilson went this way:

> THE COURT: Okay. I have received some letters from you during the course of the case pending, some of which expressed some lack of access, I think, I might put it, to Mr. Straetker. Is that any problem for you today to go ahead with Mr. Straetker representing you in the case?
>
> THE DEFENDANT: No, Your Honor.

*Id.*

The prosecutor was asked to provide a factual basis for the plea. He did so in excruciating detail. (*Id.* at CM/ECF pp. 25-30.) For present purposes, I do not need to recite the disturbing factual basis in great detail. Summarized and condensed, the plea was based in part upon Wilson's confession to investigators. Wilson, accompanied by his pastor, voluntarily went unannounced to the Sheriff's office to confess and there he did. The factual basis for the plea was also based upon the statements of the children and a video of one of the children engaging in a sex act. The video was found on a computer in Wilson's home. All of the elements of the crimes were established by the recitation of the factual basis.

### *Overview of Applicable Law*

Three strands of federal habeas law intertwine in this case. They are the law of exhaustion and procedural default, the deference that is owed to the state courts when a federal court reviews the factual or legal conclusions set forth in an opinion of a state court, and the standard for evaluating a claim of ineffective assistance of counsel. I briefly set out those principles now, so that I may apply them later in a summary fashion as I review petitioner's claims. I turn to that task next.

### *Exhaustion and Procedural Default*

As set forth in 28 U.S.C. § 2254(b)(1):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A)   the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)   (i)   there is an absence of available State corrective process; or
>
>        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts *before* seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation marks omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### *Nebraska Law Relevant to Procedural Default*

Under Nebraska law, you don't get two bites of the post-conviction apple; that is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003).

Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). *See also* *State v. Thorpe*, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased.")

Still further, Nebraska regularly enforces the appellate rules which it has adopted. For example, "[a]n alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. [A Nebraska] appellate court does not consider errors which are argued but not assigned." *State v. Dill*, 913 N.W.2d 470, 476 (Neb. 2018).

Under Nebraska's post-conviction statute the petitioner has no right to be present in court particularly when the post-conviction court is only determining the scope of the record. "A court may entertain and determine such motion without requiring the production of the prisoner, whether or not a hearing is held." Neb. Rev. Stat. Ann. § 29-3001(3) (West).

Nebraska has a statute of limitations for post-conviction actions that is similar to the federal statute of limitations in habeas corpus cases. It reads:

> (4) A one-year period of limitation shall apply to the filing of a verified motion for postconviction relief. The one-year limitation period shall run from the later of:
>
> (a) The date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal;
>
> (b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence;
>
> (c) The date on which an impediment created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state, is removed, if the prisoner was prevented from filing a verified motion by such state action;
>
> (d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right has been made applicable retroactively to cases on postconviction collateral review; or
>
> (e) August 27, 2011.

Neb. Rev. Stat. Ann. § 29-3001 (West).

### *Deference Under 28 U.S.C. § 2254(d)*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court acts contrary to clearly established federal law if it applies a legal rule that

contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id*. However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

### The Especially Deferential *Strickland* Standard

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. The standard is very hard to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, as set

forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with special vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

### *Analysis*

I next apply the foregoing law to the claims. I do so in a summary fashion for the sake of both clarity and conciseness.

### *Claim One–Wilson's request for new counsel*

Respondent argues that this claim was procedurally defaulted because it was not raised on direct appeal. I am not sure that Respondent is correct even though it is true that the claim was not raised on direct appeal and it did not relate on its face to ineffective assistance of counsel. But, since Wilson was represented on appeal by

the same lawyer who Wilson wanted replaced, it is questionable under Nebraska law whether the Nebraska appellate courts would have considered such an argument since the claim, at least indirectly, implicated the appellate lawyer's own trial conduct. *Cf.* *State v. Fox*, 840 N.W.2d 479, 484 (Neb. 2013) (When lawyers employed by the same office represent a defendant both at trial and on direct appeal, the defendant's first opportunity to assert a claim of ineffective assistance of counsel is in a motion for post-conviction relief.) Indeed, in the post-conviction ruling the judge seemingly so held. (Filing no. 11-10 at CM/ECF pp. 155 (citing *Fox*); 156-157 (construing the failure to appoint new counsel in effect as a claim of ineffective assistance of counsel)). Nevertheless, Claim One is entirely lacking in merit.

First, Wilson told the judge, albeit somewhat grudgingly, that he was satisfied with counsel when he entered his guilty plea. Second, in the post-conviction proceedings the trial judge determined that trial counsel was not ineffective. Thus, the failure to appoint new counsel could not have prejudiced Wilson. As the trial judge found in the post-conviction opinion, this ruling essentially moots the claim that the trial judge violated Wilson's Constitutional rights by not replacing the lawyer. Wilson received a Constitutionally effective lawyer and that is all that he was entitled to receive. He was not entitled pick and choose. The trial court's decision is entitled to great deference and there is no reason not to accord such deference to that opinion.

> ***Claim Two, Ground 1–Counsel failed to communicate***
> ***Claim Two, Ground 4–Counsel failed to attack the search warrants***
> ***Claim Two, Ground 5–Counsel failed to attack inculpatory statements***
> ***Claim Two, Ground 6–Counsel failed to investigate another suspect***
> ***Claim Three–Counsel did not attack lack of evidence of visual depiction***

To the extent that these claims were actually raised in the post-conviction proceedings before the trial judge, they are procedurally defaulted. This is because they were not specified as error and argued in the brief on appeal (Filing no. 11-6 at

CM/ECF pp. 6, 14-44) in violation of established and consistently enforced Nebraska law on appellate practice and because the Nebraska courts will not consider successive post-conviction actions. Furthermore, and in any event, the Nebraska statute of limitations has run for the filing of a post-conviction action.

Petitioner has failed to show cause or prejudice for the defaults or a miscarriage of justice. Thus, the defaults cannot be excused.

But, even if these claims were not procedurally defaulted and they were in fact presented to trial judge during the post-conviction proceedings, his opinion, the last fully reasoned decision, is entitled to great deference. Wilson walked into a Sheriff's office unannounced and voluntarily confessed.

There was very little trial counsel could have done but try to get the best deal possible for Wilson which in this case appears to have been the one he got– avoidance of one additional sexual assault charge regarding one of his children that would probably have run consecutively. There is no reason why deference should not be given to the trial judge's determination that trial counsel was not ineffective.

### Claim Two, Ground 2–Counsel failed to attack venue

The state district judge resolved this claim against Wilson. (Filing no. 11-10 at CM/ECF p.158.) Again, that decision is entitled to great deference and there is no reason that such deference should not be conclusive here.

### Claim Two, Ground 3–Counsel and the 48-hour initial appearance rule

Again, the state district judge considered the asserted failure of counsel to raise the alleged fact that Wilson was not presented to a judge within 48 hours of his arrest for a probable cause determination. (Filing no. 11-10 at CM/ECF p. 157.) The judge rejected the claim holding that Wilson was relying upon a citation to authority that did

not exist. The judge then essentially determined that there was no undue delay between Wilson's arrest and presentment to a judge.

Indeed, my independent examination of the record shows (1) that Wilson walked into the Sheriff's office on January 18, 2014, (2) that he began his confession at about 4:45 p.m., (3) that he was not arrested until 6:10 p.m. (Filing no. 11-9 at CM/ECF p.7) and (4) that a judge detained Wilson on January 19, 2014, finding that there was probable cause to believe Wilson committed a crime. (*Id.* at CM/ECF p. 8.)

### *Miscellany*

Wilson complains that he was prevented from making a telephonic appearance at a "records hearing" that was held on July 1, 2016, regarding the post-conviction matter. While this gripe is not asserted as a claim, I address his complaint to avoid any confusion about the "cause and prejudice" standard or otherwise.

In Nebraska post-conviction practice, a "records hearing" is sometimes held where the judge is determining what records to consider when a post-conviction motion has been filed. In this case, the judge notified Wilson that he could appear by phone if desired, although, as indicated earlier, Wilson had no right to be present under Nebraska law. In any event, there is a dispute about what happened. The judge determined that Wilson had not followed the instructions for how to set up the telephonic appearance and Wilson asserted that he was on the phone at the institution ready to take the judge's call. Why Wilson assumes that it was the judge's responsibility to call the prison is not clear from the record.

In any event, I have reviewed the transcript of the hearing. The judge decided to consider *everything* including "the Bill of Exceptions, which was prepared for the appeal in this case, any transcript that went with that, . . . the entire District Court file and . . . [the] search warrant files . . . ." (Filing no. 11-10 at CM/ECF p. 161.) A prosecutor was present but made no argument.

In short, Wilson has nothing to complain about regarding how the "records hearing" was conducted. He was not prejudiced in any way.

Finally, a petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in Slack v. McDaniel, 529 U.S. 473, 484-485 (2000). I have applied the appropriate standard and determined that Petitioner is not entitled to a certificate of appealability.

IT IS ORDERED that the habeas corpus petition (Filing no. 1) is denied and dismissed with prejudice. No certificate of appealability has been or will be issued. Judgment will be issued by separate document.

DATED this 29th day of May, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge